DEN *ex dem.* STEPHEN DIMON *against* JONATHAN DIMON.

#### EJECTMENT.

A defendant in an action of ejectment, cannot set up an outstanding mortgage in the hands of a stranger to defeat the title of the mortgagor or his heirs.

The assignment of a mortgage ought to be by writing under seal.

The payment of the money due on the bond which accompanies a mortgage, gives to the person paying the bond, no title to the mortgaged premises.

*Anderson,* for plaintiff.

*J. S. Halsted,* for defendant.

FORD, J. delivered the opinion of the court.

Stephen Dimon, the plaintiff, made title to *one-tenth* of 48 acres of land whereof his father, John Dimon, died seized in fee, and from whom it descended to his eight sons and four daughters, in the proportion of one-tenth to a son, and one-twentieth to a daughter. It appeared, however, that the ancestor in his lifetime had mortgaged the whole 48 acres to secure the payment of a bond to James Henry for $66.59, which money was due and unpaid at the time of the ancestor's death. The defendant then produced the bond containing three endorsements of money, which he had paid on the same, the last of which was $214 in full of the said bond; he also produced the mortgage containing an assignment thereof to him, under the hand, but not under the

seal, of James Henry, in the following words : " May 29th, 1818, I do hereby assign all my right and title to the within mortgage to Jonathan Dimon ;" upwards of eight years afterward, on the 26th of November, 1826, James Henry endorsed a formal assignment, on the mortgage, under his hand and seal, to the defendant, but it was not so assigned till just before the trial of the cause, and long after the commencement of the action, and after the plea of not guilty. It was assigned however in consideration of payments made in 1818. The bond, mortgage, payments and assignments being duly proved, the mortgage thus assigned was offered as evidence of title for the defendant, but was overruled by the court. The defendant now moves for a new trial on the ground that this evidence ought to have been received in either of these points of light.

The first ground is, that if the *mortgage* had never been assigned, it nevertheless would be a good subsisting title in James Henry, and would have proved that the title of the premises was not in the plaintiff. Now it will readily be admitted as a good general rule, that a plaintiff in ejectment cannot recover premises, the title to which is in a third person, and not in himself; but this rule never obtains where the outstanding title is a *mortgage.* For though such mortgage be a title at law for the mortgagee or his representatives, if *he* or *they* come into a court of law to enforce it ; yet until they do enforce it by action or entry, it is so far from being a *title* that the mortgagor is considered in law the owner of the land ; and no *stranger or third person* will be allowed to set up such mortgage against *him or his heirs.* In *Rex.* v. *St. Michaels, Doug.* 610, Lord Mansfield said : " It is an affront to common sense, to say that the mortgagor is not the owner of the land." Agreeably to this it was holden, in 7 *Johnson* 282, " that a mortgage before foreclosure or entry, is not regarded as a *legal title,* which a stranger can set up." The same doctrine was holden in 4 *Johns.* 43 ; 6 *Johns.* 290 ; 7 *Johns.* 380, and a

number of other cases collected in *Adams on Ejectment*, 29, *note* 3. 1 *South.* 275; 2 *South.* 865. Therefore if this mortgage had never been assigned to the defendant, it could not be set up *by him* against the mortgagor or his heirs.

But *secondly.* The mortgage was assigned by James Henry, regularly under his hand and seal, after the commencement of the plaintiff's action, and the title under the assignment was thereby vested in the defendant. But a title that has been acquired by the defendant, since he entered and dispossessed the plaintiff, cannot justify him for having committed those tortious acts, at a time when he had no title to justify him; nor can an assignment have relation back so as to heal a prior trespass. Beside a mortgagee, who is not a party, has no power to interpose his mortgage in such a manner as to fling the costs of a suit, which was rightfully brought at the time, on the party who brought it. It would be allowing to a mortgagee all the benefit of being made a defendant, whether he had the right to be made such or not, and with the further advantage of not being liable for costs in any event of the suit. Therefore, an assignment that was obtained from the mortgagee, after the suit is commenced, and after the defendant had plead to issue, ought not to have been received in evidence, and in this point of view was very properly overruled.

But *thirdly.* It is insisted that the defendant's title accrued to him as assignee at the time he paid the money on the bond, which was in the year 1818, long prior to the commencement of the action, and that the subsequent assignment, under seal, was not the title, but only the evidence of it. That courts of equity do consider the debt as the principal, and the mortgage for its security as an incident which follows and attends the principal, need not be controverted; nor that they would consider James Henry, from the time he received the money, as a trustee holding the mortgage for the use of the defendant, and that the defendant had, therefore, an equitable title to the premises. But no *equit-*

*able title* will avail in an ejectment. The cases in which it was once held otherwise have long been overruled, and any argument upon a point so fully and ably settled, would appear at this time to be out of place. See *Adams on Ejectment* 32; the cases cited in his margin and in note 6. It never has been held at the common law, that payment of money for land gives a title to it, without a conveyance; it may entitle the party to a decree for specific performance, on application to a court of equity; or in a court of law to damages for breach of covenant; but the title itself remains unchanged, and may be conveyed, contrary to the covenant, to any other person not having notice of the contract. So that an agreement for the purchase of land and even payment of the full consideration for it, gives no title at law; and on the whole case the verdict is right.